U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

OCT 3 0 2006

ROBERT H. SHEMWELL, CLERK
BY _____
   DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| JOSEPH HARRIS | DOCKET NO. 06-CV-1213; SEC. P |
|---|---|
| VERSUS | JUDGE DRELL |
| RICHARD L. STALDER, ET AL | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is the *pro se* civil rights complaint (42 U.S.C. § 1983) of Plaintiff Joseph Harris, filed *in forma pauperis* on July 18, 2006. Harris is an inmate at the Avoyelles Correctional Center ("AVC"). Harris claims that AVC failed to keep the kitchen floor free of water and other fluids that caused him to slip and fall; he was denied proper medical treatment at AVC; and, he was subjected to cruel and unusual punishment in violation of the Eight Amendment. He names as defendants Richard Stalder, Warden Lynn Cooper, Sidney Fisher, Assistant Warden Bud Hayes, Lieutenant Cindy Soileau, Sergeant J. Aymond, Sergeant Jacob Louis, Nurse Carol Jeansonne, Nurse Jennifer Doyle, and Alphonse Pacheco, MD.

This matter has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 626 and the standing orders of this Court. For the following reasons, it is recommended that Harris' complaint be DENIED and DISMISSED WITH PREJUDICE as frivolous and for failing to state a claim for which relief may be granted.

## STATEMENT OF THE CASE

Plaintiff has alleged:

1. On June 30, 2005, while exiting the seating area in prison dining hall, Plaintiff slipped and fell on the wet kitchen floor, injuring his head, neck, and back.

2. Plaintiff was taken to the infirmary where he was examined by Dr. Pacheco. Plaintiff was administered Motrin and sent back to the housing unit.

3. Later that evening, Plaintiff got up to use the restroom, and he became dizzy and passed out. Plaintiff woke up as Nurse Jennifer Doyle was placing him on a stretcher. The nurse took Plaintiff to the infirmary.

4. Nurse Jeansonne accused Plaintiff of faking his injuries. Then, Jeansonne and Sergeant Louis began attacking Plaintiff. Sgt. Aymond ordered them to stop.

5. Jeansonne then opened an ammonia nitrate capsule and poured the liquid in Plaintiff's nose. Plaintiff was again sent back to the housing unit.

7. On July 1, 2005, Plaintiff sent another inmate to retrieve medical assistance for him because Plaintiff stated that he could not get out of bed due to head pain and dizziness. Plaintiff was again taken to the infirmary, but was informed by a nurse that the doctor was not in. Nonetheless, the nurse admitted Plaintiff to the skilled nursing unit ("SNU").

8. On July 5, 2005, Plaintiff was examined by Dr. Pacheco, who gave Plaintiff a medical duty status for three days of no duty. The doctor did not prescribe any medicine, and he denied the Plaintiff's request for x-rays.

9. After being returned to the housing unit, Plaintiff submitted a letter to Warden Lynn

Cooper asking for "proper" medical attention. Plaintiff never received a response from the Warden.

10. On July 11, 2005, Plaintiff was forced to work in the field despite a duty status of regular duty with walking limitations. He made a medical emergency call and was again taken to the infirmary by field staff. He was treated by the attending nurse, issued Motrin, and returned to the housing unit.

11. Late in the evening of July 11, 2005, Plaintiff made another medical emergency call. This time, medical did not go to get him; he had to borrow a wheelchair and have an inmate wheel him to the infirmary. He was issued more Motrin and a pass to return the next day.

12. On July 12, 2005, Plaintiff was again wheeled to the infirmary by another inmate. Upon his arrival at the infirmary, Nurse Kasey treated him with a "hostile attitude and uncaring disposition." He had to wait hours to be examined by the doctor, who again examined him and gave him a duty status of no duty for three days. Plaintiff refused to leave the infirmary without "proper" medical attention. He was then admitted to the SNU. A few days later, Plaintiff was examined by Dr. Pacheco. Plaintiff remained in the infirmary until July 18, 2005.

13. On July 18, 2005, Kasey issued Plaintiff a walking cane and a duty status for seven days of no duty. He was discharged on that day.

14. Plaintiff submitted a complaint through the prison's Administrative Response Process ("ARP"), but he received no response. Therefore, on July 22, 2005, Plaintiff forwarded his ARP complaint to Stalder's office. Stalder's office sent the ARP back

to the prison for review. Plaintiff never received a response from AVC.

On August 10, 2006, Plaintiff was ordered to amend his complaint and provide the Court with additional information regarding the allegations against each defendant. Plaintiff amended on August 28, 2006. Plaintiff has alleged that he attempted to exhaust the administrative remedies by submitting an ARP complaint; then, when he received no response, Plaintiff sent the complaint directly to Stalder.

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obligated to evaluate the complaint and dismiss it without service of process if it is frivolous,[1] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. See Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood,

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact. See Booker v. Koonce, 2 F.3d 114, 115 (5th Cir. 1993); Denton v. Hernandez, 504 U.S. 25 (1992).

4

47 F.3d 1427, 1433 (5th Cir.1995).

## 2. Slip and Fall

First, Plaintiff claims that he was injured when he slipped and fell on a wet floor in the kitchen of Avoyelles Correctional. He claims that Lt. Cindy Soileau and Assistant Warden Bud Hayes are legally responsible because they are in charge of the kitchen, and they failed to execute safety measures to keep the kitchen floor free from water and other fluids. Plaintiff does not allege that Lt. Soileau or Warden Hayes deliberately or wantonly caused him to fall. He simply argues that they should have implemented better safety procedures. In order to state a viable claim under §1983, "a plaintiff must ... prove that the alleged constitutional deprivation was not the result of mere negligence," Farmer v. Brennan, 511 U.S. 825, 835 (1994), since "[t]he negligent deprivation of life, liberty or property is not a constitutional violation," Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir.1995). Plaintiff has, at best, alleged that Lt. Soileau and Warden Hayes were negligent in failing to keep the kitchen floors dry. Plaintiff cannot proceed with a negligence claim under Section 1983.

## 3. Medical Care

Plaintiff's allegations do not support a claim that he was denied proper medical care. In fact, his own allegations indicate that the opposite is true. To state a claim for the denial of proper medical treatment under § 1983, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001), *quoting* Estelle, 429 U.S. at 107. "Deliberate indifference 'is an extremely high standard to meet." Id. *quoting* Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

Here, the plaintiff claims that he was denied medical care. However, by his own admission, Plaintiff was frequently seen by doctors and nurses who evaluated his condition and treated him. Specifically, the plaintiff outlines at least eight occasions from June 30, 2005 through July 18, 2005, on which he was treated by a medical professional for his alleged injuries. According to the Complaint and Amended Complaint, Plaintiff sought no further treatment after being discharged from the infirmary on July 18, 2005.

The plaintiff clearly disagreed with the doctor's opinion that x-rays were not necessary, and he believes that more medication should have been prescribed. Therefore, Plaintiff believes that his treatment was inadequate. However, the plaintiff cannot show that he was exposed to a substantial risk of serious harm and that jail officials acted, or failed to act, with deliberate indifference to that risk. Plaintiff's disagreement with his medical treatment does not state a claim under the Eighth Amendment. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997), *citing* Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir.1985).

### 4. Attack in Infirmary

Plaintiff claims that Jeansonne and Sgt. Louis used excessive force against him and that Sgt. Aymond failed to stop them. The Eighth Amendment proscribes only "punishments" that are "cruel and unusual." The United States Supreme Court has held that, while the malicious and sadistic use of force to cause harm is actionable, not every "malevolent touch" by a prison guard gives rise to a federal cause of action. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). Rather, "[t]he Eighth

Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotation marks omitted).

The Fifth Circuit has held that some physical injury is an indispensable element of an Eighth Amendment excessive force claim. See Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999), citing Knight v. Caldwell, 970 F.2d 1430, 1432-33 (5th Cir. 1992) (Hudson "does not affect the rule that requires proof of injury, albeit significant or insignificant"; "injury" properly defined as physical injury); Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) ("Because he suffered no injury ... [there] was a de minimis use of physical force ... not repugnant to the conscience of mankind"; emphasis added). Here, Plaintiff has alleged that Jeansonne and Louis "attacked" him in the infirmary, which caused Plaintiff to have "prolonged periods of severe pain and have problems sleeping due to pain." [Doc. #5, p.4] According to Plaintiff's complaint, he passed out in his cell and was taken to the infirmary on a stretcher where he was "attacked" by the defendants. More detailed is set forth in Plaintiffs ARP. Specifically in his ARP, Plaintiff wrote that once he arrived at the infirmary, the nurses and officers asked and then ordered Plaintiff to get up off of the stretcher. Plaintiff continually refused to get up, stating that he wanted medical treatment and wanted to see a doctor. After refusing to get up off of the stretcher, Jeansonne and Louis attempted to physically remove Plaintiff from the stretcher. Plaintiff claims that Jeansonne "grabbed" his right leg and shouted at him to "get up." After he did not get up, Jeansonne popped an ammonia nitrate capsule and held it up under his nose in order to make him get up. Plaintiff claims that she purposely let a few drops of the substance get in his nostril. Plaintiff claims that Louis also tried to forcibly remove him from the stretcher.

7

Accepting plaintiff's allegations as true, he has not demonstrated that the force used by defendants was applied maliciously and sadistically to cause harm, as is required for a viable excessive force claim. The pleadings suggest that the "force," if any, was minimal and was applied in an effort to restore or enforce discipline because Plaintiff refused to get off of the stretcher. Furthermore, Plaintiff has not demonstrated that he suffered more than a *de minimis* injury. Despite being treated numerous times after the "attack" for alleged injuries related to the slip and fall, Plaintiff did not claim to be injured from the "attack;" he only complained of pain from the slip and fall in the kitchen.

### 5. ARP

Plaintiff claims that Stalder, Cooper, Fisher, nmates have no constitutional right to a satisfactory resolution of their grievances and complaints. A prisoner has a liberty interest only in freedoms from restraint imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison [*16] life. Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); Geiger, 404 F.3d at 373. As plaintiff has no liberty interest in a satisfactory resolution of his grievances, any failures by prison officials to address or remedy his grievances do not violate a constitutional right. See, e.g., Taylor v. Cockrell, 92 Fed. Appx. 77, 2004 WL 287339 at *1 (5th Cir., 2004) (not designated for publication) (holding that claims that prison officials violated constitutional rights by failing to investigate grievances fall short of establishing a federal constitutional claim).

To the extent plaintiff claims that by denying him relief under his grievances prison officials were deliberately indifferent to his health and safety needs, he fails to show a physical injury sufficient

to support an Eighth Amendment claim. See Geiger, 404 F.3d at 374. Nor does he show that defendants were aware of and deliberately disregarded an excessive risk to plaintiff's health and safety. Plaintiff's claims of deliberate indifference as to his prison grievances and complaints will be dismissed.

For the foregoing reasons, Plaintiff's claims lack an arguable basis in fact and law and are frivolous. See Neitzke v. Williams, 490 U.S. 319 (1989).

## CONCLUSION

Therefore, **IT IS RECOMMENDED** that Plaintiff's civil rights action be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this 30th day of _____October_____, 2006.

James D. Kirk
**UNITED STATES MAGISTRATE JUDGE**